Filed 3/6/14  P. v. Yanes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>THOMAS VICTOR YANES III,<br><br>　　　Defendant and Appellant. | E059176<br><br>(Super.Ct.Nos. RIF12000025 & RIF1203880)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Thomas Victor Yanes III appeals after he pleaded guilty in two cases, one for criminal threats and stalking, and one for failure to appear for sentencing in the threats/stalking case.  We affirm.

1

Apparently, in late December 2011 through January 1, 2012, defendant engaged in a course of conduct that threatened his children and their mother.  The most detailed factual description was contained in defendant's declaration in support of his later motion to withdraw his plea.  He complained that, "the charges I faced were substantially affected by the ever more seriously alleged facts told to the police, etc., via an ever-changing story told by the so-called victims.  Their story increased in seriousness and was different every time they told it; at first I was just pounding on their front door, to finally I had a gun in my hand, was yelling threats, that they escaped through second story windows, and that they constantly lived in fear of me."  Defendant asserted that, "I did not know about this ever-changing story at the time I entered this plea."

In any event, defendant was charged by a felony complaint on January 12, 2012, with six separate counts:  Count 1, felony child endangerment on a victim, E. (Pen. Code, § 273a, subd. (a)); count 2, felony criminal threats against John Doe (Pen. Code, § 422); count 3, a felony graffiti charge (Pen. Code, § 594, subd. (b)(1)); count 4, felony stalking of Jane Doe (Pen. Code, § 646.9, subd. (a)); count 5, felony criminal threats against Tim Doe (Pen. Code, § 422); and count 6, felony criminal threats against Jane Doe (Pen. Code, § 422).  Count 2, in particular, alleged that, "on or about December 29, 2011, . . . [defendant] did willfully and unlawfully, with the specific intent that his statements would be taken as a threat, threaten another person, to wit:  JOHN DOE, to commit a crime which would result in great bodily injury and death, which threat on its

2

face and under the circumstances in which it was made was so unequivocal, unconditional, immediate and specific as to convey to said person a gravity of purpose and an immediate prospect of execution of the threat, and thereby caused said person to reasonably be in sustained fear for his own safety and the safety of members of his immediate family." Count 4 specifically alleged that, "on or about January 1, 2011 [*sic*: later corrected to 2012] . . . [defendant] did willfully, unlawfully, maliciously, and repeatedly follow and harass JANE DOE, and make a credible threat with the intent to place JANE DOE in reasonable fear of JANE DOE's safety and the safety of JANE DOE's immediate family."

After a number of continuances, the preliminary hearing was set for August 1, 2012. On the date set for the preliminary hearing, defendant entered into a negotiated plea. He agreed to plead guilty to counts 2 and 4; upon sentencing, the remaining counts would be dismissed. The understanding of the plea bargain was that defendant would be placed on three years' formal probation, with a condition that he serve 320 days "straight time" in the county jail. Defendant would also be required to complete a domestic violence program and perform 20 hours of community service. Count 2, criminal threats, would be a strike offense, and defendant would be subject to the future consequences of having a prior strike conviction. Defendant affirmed orally to the court that he had read the change-of-plea form, had personally initialed the appropriate boxes, and had gone over all the provisions with his attorney, and understood his rights and the consequences of the plea. The court asked defendant, as to count 2 and count 4, how he wished to plead

to each charge. Defendant pleaded guilty. After each statement that defendant pleaded guilty, the court specifically inquired, reading out the language of each of the charges, whether defendant had done the acts alleged. Defendant stated, "Yes," in response to each factual inquiry.

The court stated on the record that, "After directly examining the defendant, the Court determines the defendant has knowingly, intelligently, freely, and voluntarily waived his rights. He understands the charges against him and the possible consequences of his plea. He has personally and orally entered his plea in open court. The plea has been accepted by the prosecuting attorney. The waiver of rights form is incorporated into the record and the plea of guilty will be entered at this time. I do find a factual basis for the pleas to count 2 and count 4."[1] The finding of a factual basis was evidently based on defendant's admission of the facts in the criminal complaint.

Defendant waived a probation referral, and sentencing was set for September 5, 2012. On the date set for sentencing, and for defendant to surrender to begin serving the

---

[1] The plea form included statements that defendant had initialed, including representations that all the promises made to him had been made on the form or in open court, no one had threatened or pressured defendant to plead guilty, defendant had had adequate time to discuss the matter with his attorney, and he admitted as a factual basis for the plea that he did the things stated in the charges to which he was pleading. The plea agreement stipulated that defendant would admit counts 2 and 4, that count 2 would be a strike conviction, and that defendant would be granted probation, including a custody term of 300 days. Defendant acknowledged that his exposure was up to three years eight months in state prison. He was due to surrender to serve his 300 days of custody on September 5, 2012. Defendant's retained attorney averred that he was satisfied that defendant understood the rights he was waiving, defendant had had adequate time to discuss the case with the attorney, and defendant understood the consequences of his plea.

custody term of his probation, defendant did not appear in court. The court ordered defendant's bail bond forfeited. The court issued a bench warrant for defendant's failure to appear, and relieved defendant's retained counsel.

In October 2012, the People filed a second felony complaint, alleging one count of evading the process of the court by a willful and unlawful failure to appear. Defendant was taken into custody and arraigned on the new complaint on January 17, 2013. The proceedings on the criminal threats and stalking convictions were set to trail the proceedings on the new failure to appear case. Defendant waived time for sentencing in the older case.

In May 2013, defendant filed a motion to withdraw his guilty pleas in the criminal threats/stalking case. Defendant filed a declaration claiming that he had good cause to withdraw his pleas. Defendant averred that he had not had "enough time to consider what I was accepting and the effect it would have on me." He further stated that he was "under the influence of several prescribed medications consisting of controlled substances, including anti-anxiety medication, anti-depressant medications, mood stabilizer medications and medical THC, and narcotic pain medication, all of which I had taken that morning and which affected my judgment such that this plea was not the result of sound judgment." He also claimed, as previously stated, that he was unaware of the factual allegations against him—the "changing story"—so that he did not know exactly what he was admitting he had done. Furthermore, he was "quite upset at the idea about my children testifying and this overcame my free will and good judgment as well."

The People opposed the motion, arguing that defendant had failed to show good cause to withdraw his plea. Defendant's declaration failed to proffer any defense to the charges, "other than a mere assertion that the witnesses gave additional details when pressed by a Detective." The plea had been negotiated, and defendant had received a very favorable disposition (probation), "that would not have been available to him had he been convicted of any charges at the conclusion of trial." Defendant's claim that his judgment was overcome or affected by medications was not substantiated by anything in the record; his colloquy with the court during the taking of the plea did not disclose any misunderstanding or deficiency in judgment. The People also pointed out that "defendant's understanding of the negotiated plea is further shown by the defendant's failure to attend the surrender [and sentencing] date. In addition to simply failing to surrender as promised, the defendant fled his previous residence location and was not located in the same area, but rather miles away."

Defendant's plea form (see fn. 1, *ante*) contained representations that defendant had not been threatened or coerced, that he understood his rights and the consequences of his plea, and that he had had time to discuss all matters, including defenses, with his attorney. The plea form also included representations from defense counsel that defendant had had an adequate opportunity to discuss all these matters, and that the attorney was satisfied that defendant understood his rights and the consequences of the plea.

6

In the meantime, negotiations proceeded on the new failure to appear case; the pending sentencing on the old criminal threats case was included in the negotiations, to obtain a global settlement of both cases. On July 15, 2013, defendant agreed to plead to the court on the new charge, and to be sentenced on the old charges, to run consecutively to the new charge. Defendant orally agreed in open court to withdraw his motion seeking to withdraw his guilty pleas in the old case.

The court then took defendant's change of plea on the failure to appear case, and sentenced him as follows: The court denied probation and sentenced defendant to the low term of two years eight months in state prison (i.e., 16 months, pursuant to Pen. Code, § 1170, subd. (h), which was then doubled because of defendant's strike in the old case), plus two years, to be served consecutively, on an enhancement under Penal Code section 12022.1, for committing the new offense while released from custody before judgment became final on the felony primary offense.

On the criminal threats and stalking charges, the court again denied probation, and sentenced defendant to a consecutive state prison term of eight months on the criminal threats count (one-third the middle term of two years), and a concurrent term of eight months on the stalking count. The court also issued a criminal protective order in favor of the victims and their family members. The court dismissed the remaining counts in the interest of justice, after defendant was sentenced on counts 2 and 4.

On the same day, July 15, 2013, defendant filed a notice of appeal in both cases.

7

On his appeal, defendant requested appointment of counsel to represent him. Counsel has now filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a brief summary of the facts and a statement of the case. Counsel has identified one potential arguable issue: whether the trial court erred in sentencing defendant in the failure to appear case as a second striker, when he had pleaded guilty to a strike offense, but had not yet been sentenced on the strike offense. Defendant has been offered an opportunity to file a personal supplemental brief, which he has not done.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the entire record, and find no arguable issues.

As appellate defense counsel has noted, for purposes of a conviction statute, the conviction occurs at the time a guilty plea is entered. (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1253.) A finding of guilt upon a guilty plea is a conviction within the meaning of "prior offense" statutes. (*People v. Johnson* (1989) 210 Cal.App.3d 316, 325.) The "Three Strikes" law was intended to construe the term "conviction" to mean a verdict or guilty plea, except in the case of "wobblers," where the initial sentence determines whether the offense is converted from a felony to a misdemeanor. (See *People v. Franklin* (1997) 57 Cal.App.4th 68, 72-73; Pen. Code, § 667, subd. (d)(1).) Even when the court has not imposed a sentence, the validity of a prior conviction stands

for purposes of enhancement statutes. (*People v. Shirley* (1993) 18 Cal.App.4th 40, 46-47.)

No basis for reversal appears.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
J.

We concur:


RAMIREZ _____
P. J.


HOLLENHORST _____
J.